UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

                Plaintiff,

    v.

STEVEN M. BERESFORD, et al.,

                Defendants.

CASE NO. C21-5345-JCC-SKV

REPORT AND RECOMMENDATION

## INTRODUCTION

Plaintiff United States of America filed a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. Dkt. 85. Plaintiff seeks to determine that Defendant Steven Beresford's federal income taxes for the years 2003-2006 are excepted from discharge pursuant to 11 U.S.C. § 523(a)(1)(B)(i), and to reduce those tax assessments to judgment and enforce its tax liens on real property jointly owned by Beresford and his former spouse, Defendant Diana McKnight. *Id.* Plaintiff also, pursuant to Rule 55(b), moves for default judgment against Defendant Capital One Bank (USA), N.A. ("Capital One"). *Id.* Defendants Beresford and

1    McKnight oppose Plaintiff's motion.  Dkts. 88, 90.  Beresford also filed a Motion for Summary

2    Judgment, Dkt. 86, a motion opposed by Plaintiff, Dkt. 89.

3          The Court has now considered the pending motions, responses, all documents submitted

4    in support and opposition, and the remainder of the record.  For the reasons set forth below, the

5    Court herein recommends that Plaintiff's Motion for Summary Judgment and Motion for Default

6    Judgment, Dkt. 85, be GRANTED, and Defendant Beresford's Motion for Summary Judgment,

7    Dkt. 86, be DENIED.

8                                    BACKGROUND

9          Beresford holds a Ph.D. in chemical physics.  Dkt. 85-1 (Beresford Dep. Excerpts) at

10   20:16-21:1.[1]  In or around 1996, Beresford and a group of optometrists and vision scientists

11   wrote "Improve Your Vision", a book that was published by Simon and Schuster and translated

12   into eight languages.  *Id.* at 23:1-16, 25:2-9, 28:22-29:6.  Beresford received royalty payments

13   for the sale of that book through at least 2020.  *Id.* at 24:24-26:6, 28:18-29:17.  He also,

14   sometime between 1999 and 2006, worked with a company called Vision Improvement

15   Technology to sell a second, self-published book called "See Clearly Method."  *Id.* at 23:8-24:5,

16   28:5-13.  He received a portion of royalties for sales of that book through American Vision

17   Institute (AVI), a company he owned and operated.  *Id.* at 110:1-12, 114:10-115:23.  During at

18

19   _____

     [1] Beresford filed a "Recantation of Deposition Admissions", stating Plaintiff's counsel used
20   "dishonest and intimidating behavior" and "repeatedly tricked me into making false and potentially
     incriminating admissions that do not correspond to my position." Dkt. 91 at 1-2.  A party may not, as a
21   general rule, avoid summary judgment by simply contradicting prior deposition testimony.  *See Kennedy
     v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991); *Radobenko v. Automated Equip. Corp.*, 520
     F.2d 540, 544 (9th Cir. 1975).  Although a deponent may later clarify his or her answers or resolve
22   confusion, *Scamihorn v. Gen. Truck Drivers*, 282 F.3d 1078, 1085 n.7 (9th Cir. 2002), Beresford's
     "recantation" does not serve either purpose.  He does not specify any particular testimony he seeks to
23   recant and, instead, simply recants any and all "potentially incriminating" admissions. Dkt. 91 at 1-2.
     Nor does Beresford provide, or the Court's review of transcripts reveal, any support for the allegation of
     improper behavior on the part of Plaintiff's counsel.  The Court, for these reasons, disregards Beresford's
24   Recantation of Deposition Admissions. Dkt. 91.

1  least 2002 through 2006, Beresford received regular checks from AVI for his share of royalties.

2  *Id*. at 52:16-23.

3        Beresford has a long history with the Internal Revenue Service (IRS).  For example, for

4  at least six years between 1985 and 2002, Beresford failed to file income taxes and, for at least

5  an additional eight years in that same period, filed returns multiple years late.  Dkt. 85-20 (Decl.

6  of Aspen Cruise), ¶6; Dkt. 85-21; Dkt. 85-22.

7        In 2000, Beresford sued the IRS in the United States District Court for the District of

8  Oregon.  Dkt. 85-2 (*Beresford v. IRS*, C00-0293, Compl. (D. Or. Feb. 28, 2000)).  He alleged

9  "that the American income tax system is based upon voluntary compliance[,] . . . that he cannot

10  be legally compelled to obey any law that is voluntary," and that "he therefore has no legal

11  obligation to file or pay income taxes."  *Id*., ¶1.  He sought a refund of $14,610.00, the amount

12  withheld from a sale of his property as a result of a tax lien, as well as a permanent injunction

13  forbidding the IRS "from contacting him against his wishes and from directly or indirectly

14  interfering in any other aspect of his life."  *Id*., ¶6 and at 12.  The District Court dismissed

15  Beresford's suit, stating the contention the federal tax system is based on voluntary compliance

16  "has been held to be 'completely lacking in legal merit and patently frivolous.'"  Dkt. 85-3

17  (*Beresford*, C00-0293, Op. and Order at 4 (D. Or. Jul. 13, 2000) (quoted and cited sources

18  omitted).  Beresford read the opinion when it was issued, but disagreed with the decision.  Dkt.

19  85-1 at 65:23-67:25.  The Ninth Circuit, on appeal, affirmed the decision.  Dkt. 85-4 (*Beresford*

20  *v. IRS*, No. 00-35650, Mem. Opin (9th Cir. Feb. 12, 2001)).  Again, Beresford read, but

21  disagreed with the decision.  Dkt. 85-1 at 68:24-71:4.  The United States Supreme Court

22  subsequently denied Beresford's petition for a writ of certiorari.  Dkts. 85-5 & 85-6.

23

24

1    As related to the current matter, Beresford failed to timely file tax returns with the IRS

2  for the tax years 2003-2006.  Dkt. 85-1 at 73:21-74:6.  He based his decision to not file the

3  returns on the theory that filing and paying taxes is voluntary.  *Id*.  The IRS conducted an audit

4  of Beresford for the tax years at issue.  Dkt. 85-20, ¶7.  In January 2007, Beresford submitted

5  Form 1040-EZ returns to the IRS for the years 2003-2006.  Dkts. 85-14 – 85-17.  These so-called

6  "zero returns" did not report any income, and instead included "$0.00" for every entry on the

7  return and reported "$0.00" in tax liability.  *Id*.; Dkt. 85-1 at 125:23-126:7.  Beresford also

8  submitted "corrected" Form 1099's reporting AVI paid him "$0.00" in income for the years

9  2005-2006.  Dkts. 85-10 & 85-13.  Original Form 1099s filed by AVI report $150,631.00 in

10  income for Beresford in 2005 and $128,545.00 in income in 2006.  Dkts. 85-11 & 85-12.

11  Beresford additionally submitted an "Affidavit of Material Facts", in which he asserted the

12  domestic income of United States residents is exempt from taxation, that he had not received any

13  "lawfully taxable" income for the years 2003-2005, was not liable for any federal income tax and

14  "did not derive any gross income from a taxable source" for those years, and had never received

15  any lawfully taxable income from AVI.  Dkt. 85-14 at 4-7.

16    In his deposition, Beresford testified he does not believe he ever inaccurately reported his

17  income, explaining:

18    It was my understanding that I did not have any tax liability, based on the
      voluntary compliance thing. So the returns that I filed probably mark that as a
19    zero return based on my sincere belief that I did not have a requirement, a legal
      obligation to comply with the tax rules.  I notified the IRS that that was my
20    position.

21  Dkt. 85-1 at 125:23-126:7.  When asked whether his decision to not inform the IRS of the

22  amount of money he had made was because of his desire to not pay taxes, Beresford responded:

23  "Yeah.  That would be basically the case[.]"  *Id*. at 227:12-22 ("It was my understanding that the

24

1   voluntary compliance thing applied to the assessment and payment of taxes as stated in the

2   Internal Revenue manual.  So there's no necessity to comply with the IRS, the tax laws.")  He

3   explained his decision to file the "corrected" Form 1099's as based on his belief he did "not have

4   a legal obligation to comply with the tax laws."  *Id.* at 129:3-131:12, 133:20-139:25.

5        At the conclusion of the audit, the IRS assessed taxes and penalties for the 2003-2006 tax

6   years.  *See* Dkt. 85 at 8; Dkt. 85-1, ¶¶7-12; Dkts. 85-23 – 85-25.  As of May 31, 2023, the

7   balance of tax liabilities not including penalties or interest on penalties totaled $518,673.92, and,

8   including penalties and interest on penalties, totaled $1,017,207.88.  *Id*.  The balance including

9   penalties reflects the current amount owed on 2003-2006 income tax liabilities accounting for

10  accrued interest, late-payment penalties under 26 U.S.C. § 6651(a)(3), penalties for not paying

11  estimated income taxes under § 6654, fraudulent failure to file penalties under § 6651(f) for the

12  2003-2004 years, and fraud penalties under § 6663 for the 2005-2006 years.  Dkt. 85 at 8; Dkt.

13  85-23.  The IRS calculated Beresford's income during these years based on an analysis of bank

14  deposits, including payments from AVI.  *See* Dkt. 85-20, ¶13; Dkt. 85-26 at 6-29.  It based the

15  fraud determination on Beresford having received notice of the obligation to file returns and pay

16  taxes in the lawsuit he filed in 2000, his history with respect to the filing of returns, failure to

17  cooperate in the audit, and relative sophistication, and the fact he submitted loan documentation

18  showing significant income despite a failure to timely file tax returns.  Dkt. 85-26 at 30-37.  The

19  IRS also assessed penalties pursuant to § 6702 for submitting frivolous returns and other

20  documents for the tax years 2002-2006 and 2009, in an amount totaling $69,523.91.  *See* Dkt. 85

21  at 9; Dkt. 85-20, ¶11; Dkt. 85-21.

22       Plaintiff now seeks to enforce tax liens against Beresford and McKnight's joint marital

23  property.  Beresford and McKnight married in or around 1999.  Dkt. 85-1 at 98:2-9.  During their

24

1   marriage, they maintained separate businesses and filed separate tax returns.  Dkt. 85-18

2   (McKnight Dep. Excerpts) at 51:6-15.  However, on February 19, 2004, Beresford and

3   McKnight acquired real property – located at 19300 NE 6th Street, in Camus, Washington (the

4   "Camas Property") – as husband and wife through a statutory warranty deed.  Dkt. 85-7.

5   Between 2004 and 2015, Beresford and McKnight lived together at the Camas Property as

6   husband and wife, and jointly shared in the expenses and upkeep of the property, as well as other

7   expenses such as groceries, credit card payments, and vacations.  Dkt. 85-18 at 6:23-7:5, 20:10-

8   23:16, 33:5-35:9.

9         Beresford and McKnight divorced in December 2015.  Dkt. 85-19.  Beresford testified

10  that they divorced with the hope that the lien on the Camas Property would be lifted.  Dkt. 85-1

11  at 99:14-101:1.  McKnight testified that they divorced about a year or two after she learned about

12  Beresford's tax issues, because she was "overwhelmed" by those issues and because of

13  differences in how they "viewed the world."  Dkt. 85-18 at 41:21-51:5.  Both allege that the

14  decision to divorce was made on the advice of an IRS agent.  Dkt. 85-1 at 9:25-101:1; Dkt. 86 at

15  13 ("Affidavit of Diana McKnight") ("In 2015, in response to my enquiry on how to address the

16  tax issue, the IRS agent advised me to divorce Steven, which I did later that year after 16 years

17  of marriage.  She said she would reassess the lien when the 10 year limit expired, but when the

18  time expired in 2021, she reset the lien without informing me, which I consider to be another act

19  of racial hostility.")  Despite the divorce, both Beresford and McKnight continue to reside at the

20  Camas Property.  Dkt. 85-1 at 98:10-99:13; Dkt. 85-18 at 33:19-34:4, 35:10-18, 41:8-20.

21        After assessing the above-described taxes and penalties, the IRS recorded Notices of

22  Federal Tax Lien (NFTL) against Beresford in Clark County, Washington.  *See* Dkt. 85 at 10;

23  Dkt. 85-20, ¶¶14-19; Dkts. 85-27 – 85-31.  On August 5, 2021, Beresford filed a voluntary

24

petition for relief under Chapter 7 of the Bankruptcy Code.  *In re Beresford*, No. 21-41309 (Bankr. W.D. Wash.) (Dkt. 1).  On November 12, 2021, the Bankruptcy Court entered an Order of Discharge.  *Id.* (Dkt. 35).  Due to Beresford's bankruptcy, the IRS erroneously allowed the NFTLs securing the § 6702 penalty assessments to be released by failing to refile notices of federal tax liens with the Clark County recorder pursuant to § 6323(f).  Dkt. 85-20, ¶18.  The IRS thereafter revoked the lien releases and recorded Revocation of Release of Federal Tax Liens against Beresford in Clark County, Washington pursuant to § 6325(f)(2) for tax years 2002-2006 and 2009.  *Id.*, ¶19; Dkt. 85-31.

<u>DISCUSSION</u>

A.    <u>Motions for Summary Judgment</u>

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A party seeking summary judgment must inform the Court of the basis for its motion, and identify the portions of the pleadings, discovery responses, or other materials that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant.  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  Where the non-moving party will have the burden of proof at trial, the moving party can carry its initial burden merely by "pointing out" that there is an absence of evidence to support the nonmoving party's case.  *Id.* (citing *Celotex Corp.*, 477 U.S. at 323, 325).  *See also James River Ins. Co. v. Herbert Schenk, P.C.*, 523 F.3d 915, 923 (9th Cir. 2008) (burden can be met by either producing evidence that negates an essential element of the non-moving party's claim or by establishing the absence

1   of evidence to support an essential element of the non-moving party's claim) (citing *Nissan Fire*

2   *& Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000)).  The burden

3   then shifts to the nonmoving party to establish a genuine issue of material fact.  *Matsushita Elec.*

4   *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).  The Court must draw all

5   reasonable inferences in favor of the nonmoving party.  *Id.* at 587.

6        The opposing party must present significant and probative evidence to support its claim

7   or defense.  *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).

8   "The mere existence of a scintilla of evidence in support of the non-moving party's position is

9   not sufficient[]" to defeat summary judgment.  *Triton Energy Corp. v. Square D Co.*, 68 F.3d

10  1216, 1221 (9th Cir. 1995).  Also, the nonmoving party "cannot defeat summary judgment with

11  allegations in the complaint, or with unsupported conjecture or conclusory statements."

12  *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

13        1.     Beresford's Motion for Summary Judgment:

14        In seeking summary judgment, Beresford denies he is a "'tax protester'" and states he

15  "simply responded to the IRS's statements on 'voluntary compliance'" in various publications

16  "by exercising his freedom of choice based on its true and correct meaning, believing he was

17  acting within the law."  Dkt. 86 at 7.  He contends both he and McKnight are victims of the

18  IRS's dishonest behavior, and that McKnight is an "innocent spouse", was misled by an IRS

19  agent into believing the tax burden and lien would be removed if she divorced, and that this was

20  a "maliciously racially-motivated lie that was intended to harm McKnight, who is an African

21  American, and inflict emotional distress on her and Beresford."  *Id.*  Beresford also includes

22  numerous requests for relief, including that the Court direct the IRS to remove the term

23  "voluntary compliance" from its publications; strike all penalties and interest and leave only the

24

tax due; rule that McKnight has a fifty percent security interest in the Camas Property, that

Plaintiff accept Beresford's fifty percent security interest as settlement of the tax debt, and that

the IRS remove all liens against Defendants; award damages of $400,000 or whatever the Court

deems appropriate as compensation for the destruction of Defendants' marriage, the infliction of

emotional distress, and the loss of equity in their home; resolve various alleged discrepancies in

the recorded assignments of the deed of trust for the Camas Property; and impose an injunction

against foreclosure on the property.  Dkt. 86 at 9-12.

Beresford does not set forth a viable legal basis for his motion.  He reasserts his argument

that the payment of taxes is voluntary, a contention already twice rejected by this Court, *see*

Dkts. 43, 46, 74 & 80, and previously rejected by the District Court of Oregon.  As this Court

explained:

> Neither the requirement to file a tax return, nor the requirement to pay taxes is
> voluntary. *See, e.g., Wilcox v. Commissioner of the Internal Revenue*, 848 F.2d
> 1007, 1008 (9th Cir. 1988) ("[P]aying taxes is not voluntary."); *United States v.
> Kraus*, No. C16-5449-BHS, 2018 WL 1610225, at *5 (W.D. Wash. Apr. 3, 2018)
> (noting the defendant's tax "filing and payment obligations are set out in 26
> U.S.C. § 6011 (duty to file returns in general); 26 U.S.C. § 6012 (duty to file
> income tax returns in particular); and 26 U.S.C. § 6151 (duty to pay tax at time
> return must be filed)"); and https://www. irs.gov/privacy-disclosure/the-truth-
> about-frivolous-arguments-section-i-a-to-c# at contentiona1 ("The word
> 'voluntary,' as used in . . . IRS publications, refers to our system of allowing
> taxpayers initially to determine the correct amount of tax and complete the
> appropriate returns, rather than have the government determine tax for them from
> the outset. The requirement to file an income tax return is not voluntary[.]") and at
> contentiona2 ("Section 1 of the Internal Revenue Code clearly imposes a tax on
> the taxable income of individuals, estates, and trusts," while "the obligation to pay
> tax is described in section 6151, which requires taxpayers to submit payment with
> their tax returns.") The government is also authorized by statute to collect unpaid
> taxes, *see* 26 U.S.C. § 7401 ("No civil action for the collection or recovery of
> taxes, or of any fine, penalty, or forfeiture, shall be commenced unless the
> Secretary authorizes or sanctions the proceedings and the Attorney General or his
> delegate directs that the action be commenced."), as is reflected in the First
> Amended Complaint, Dkt. 21, ¶2 ("This action is brought pursuant to 26 U.S.C.
> §§ 7401 and 7403 at the direction of the Attorney General of the United States

1    and with the authorization of Area Counsel of the [IRS], a delegate of the
     Secretary of the Treasury.")

2

3    Dkt. 43 at 3-4.  Indeed, these arguments have "'long been recognized as frivolous.'"  *Id.* at 4

4    (citing, *inter alia*, *Beresford v. IRS*, No. C00-293, 2000 WL 1274245, at *2 (D. Or. July 13,

5    2000) (stating plaintiff's contention "that the federal income tax system is based on voluntary

6    compliance, has been held to be 'completely lacking in legal merit and patently frivolous.'")

7    (citations omitted)).  *Accord* Dkt. 74 at 4-5.  Beresford further fails to identify portions of the

8    pleadings, discovery responses, or other materials he contends demonstrate the absence of a

9    genuine issue of material fact.  *See* Dkt. 86.  Beresford, in sum, is not entitled to a judgment as a

10   matter of law and his summary judgment motion should be denied.[2]

11        2.    Plaintiff's Motion for Summary Judgment:

12        In moving for summary judgment, Plaintiff seeks to determine that Beresford's federal

13   income taxes for the years 2003-2006 are excepted from discharge in bankruptcy, to reduce the

14   tax assessments to judgment, and to enforce its tax liens on the Camas Property.  Dkt. 85.[3]  The

15   Court addresses the issues and arguments pertinent to Plaintiff's motion below.

16        a.    Income tax liabilities and bankruptcy discharge:

17        Pursuant to 11 U.S.C. § 523(a)(1)(B)(i), a bankruptcy discharge does not discharge a tax

18   debt "with respect to which a return . . . was not filed or given[.]"  For purposes of this provision,

19

20   _____

     [2] The Court, as requested by Beresford, also considers the content of this filing as his "full
     Objection" to Plaintiff's motion.  Dkt. 88 at 1, 4.

21   [3] Plaintiff clarifies that, although it alleged in its Third Amended Complaint that the penalties
     associated with the tax liabilities were excepted from discharge pursuant to 11 U.S.C. § 523(a)(7), it no
22   longer contends the penalty liabilities with respect to Beresford's 2003-2006 taxes are excepted from
     discharge and is not seeking to reduce those penalty assessments to judgment.  Dkt. 85 at 11, n.2.
23   Plaintiff further notes that, while it also alleged Beresford's tax liabilities are excepted from discharge
     under § 523(a)(1)(C), it is not herein requesting the Court grant judgment under that provision, but
     intends to make that argument if the current motion is denied and this case proceeds to trial.  *Id.* at 11, n.3.
24

1    a "'return' means a return that satisfies the requirements of applicable nonbankruptcy law

2    (including applicable filing requirements)." § 523(a).  In the Ninth Circuit, for a taxpayer filing

3    to satisfy the requirements of applicable nonbankruptcy law and thus qualify as a return for

4    purposes of § 523(a):  "'(1) it must purport to be a return; (2) it must be executed under penalty

5    of perjury; (3) it must contain sufficient data to allow calculation of tax; and (4) it must represent

6    an honest and reasonable attempt to satisfy the requirements of the tax law.'"  *In re Smith*, 828

7    F.3d 1094, 1096-97 (9th Cir. 2016) (quoting *In re Hatton*, 220 F.3d 1057, 1060-61 (9th Cir.

8    2000) (adopting interpretation of the term developed in *Beard v. Comm'r of Internal Revenue*, 82

9    T.C. 766 (1984), *aff'd sub nom. Beard v. Comm'r*, 793 F.2d 139 (6th Cir. 1986))).

10           In this case, Beresford filed so-called "zero returns" for the years 2003-2006, reporting

11   "$0.00" in income and "$0.00" in tax liability, and without any indication of income earned in

12   those years.  *See* Dkts. 85-10 – 85-17, 85-26.  Plaintiff argues these filings were not "honest and

13   reasonable attempts" to satisfy the requirements of tax laws, do not qualify as returns for

14   purposes of § 523(a), and that the resulting tax liabilities are not excepted from discharge.  *See,*

15   *e.g., In re Ernst*, No. 05-3095, 2006 WL 205042, at *7 (Bankr. D. Or. Jan. 3, 2006) ("Where a

16   taxpayer's returns contain no self assessment but do contain specious arguments denying tax

17   liability, he has not shown a reasonable attempt to comply with tax laws."; finding returns

18   containing "zeros on all income lines" and attaching arguments opposing the application of IRS

19   laws were not returns within the meaning of § 523(a)).  Plaintiff also asserts that the Ninth

20   Circuit's decision in *United States v. Long*, 618 F.2d 74 (9th Cir. 1980), does not compel a

21   contrary conclusion.  The Court agrees on both of these points.

22           In *Long*, the Ninth Circuit addressed the validity of "zero returns" within the context of a

23   criminal prosecution for willful failure to file income tax returns under 26 U.S.C. § 7203.  *Id*. at

24

75. Under the applicable standard, a tax form that did not contain any information relating to the taxpayer's income from which the tax could be computed was not a valid return under § 7203. *Id.* (applying standard adopted in *United States v. Klee*, 494 F.2d 394, 397 (9th Cir. 1974)).  In finding the zero returns valid, the Ninth Circuit distinguished incomplete or blank tax forms, which did not provide any information allowing for a calculation, from forms containing zeros, which conveyed information, even if false.  *Id.* at 75-76.  The Ninth Circuit later reaffirmed this position, stating "*Long* properly turns on the presence or absence of financial information," but distinguished a return containing only asterisks, from which nothing could be calculated and thus was not valid under § 7203.  *U.S. v. Kimball*, 925 F.2d 356, 357-58 (9th Cir. 1991) (en banc).[4]

The Ninth Circuit also, however, acknowledged in a decision subsequent to *Long* that the meaning of a "return" could differ depending on the statutory provision at issue.  *Conforte v. Comm'r*, 692 F.2d 587, 591-92 (9th Cir. 1982) (directing a "purpose-oriented approach" to interpreting the meaning of a "return" as used in different statutory provisions).  The Court further, for purposes of § 523(a) and as described above, adopted the definition of a return including the requirement that it "'represent an honest and reasonable attempt to satisfy the requirements of the tax law.'"  *In re Hatton*, 220 F.3d at 1060-61 (finding this definition provided a "sound approach" under the Bankruptcy Code and was "consistent with the purpose of a return, which is not only to get tax information in some form, but 'to get it with such uniformity, completeness, and arrangement that the physical task of handling and verifying returns may be readily accomplished.'") (quoted sources omitted).

---

[4] Courts outside of the Ninth Circuit disagree with the conclusion in *Long*.  *See, e.g., Hamzik v. U.S.*, 64 Fed. Cl. 766, 767 n.4 (2005) (stating that the rationale in *Long* "has been universally rejected by courts outside the Ninth Circuit.") (omitting case citations).

As explained by one district court, *Long* does not control within the context of § 523(a) because it was decided under an earlier, inapplicable standard and before the adoption of the "honest and reasonable attempt" requirement. *In re Ernst*, 2006 WL 205042, at *6-7. In fact, "[v]irtually every court which has addressed the issue has concluded that tax returns showing 'zero' income and containing tax protester arguments as to why the tax laws do not apply to the filer do not comply with the requirement that the returns evidence an honest and reasonable attempt to comply with tax laws." *Id.* at *6 (citations omitted). *See also Flint v. Comm'r*, 104 T.C.M. (CCH) 437, 2012 WL 4795575, at *5, n.2 (T.C. Oct. 9, 2012) (income tax liabilities not discharged where tax forms inaccurately reporting no earned wages did not qualify as returns because they were not an honest and reasonable attempt to satisfy the requirements of tax laws; stating: "The *Beard* test is appropriate in bankruptcy-discharge cases, such as this one, that are appealable to the Ninth Circuit, despite *United States v. Long*, 618 F.2d 74, 75-76 (9th Cir. 1980).")[5]

In this case, the evidence before the Court shows that Beresford filed tax forms for the years 2003-2006 reporting "$0.00" in income and "$0.00" in tax liability, despite income earned during those years. Dkts. 85-10 – 85-17, 85-26. As such, Beresford's "zero returns" were not honest and reasonable attempts to satisfy the requirements of the tax law, do not constitute returns for purposes of § 532(a), and the tax assessments for the tax years 2003-2006 are not excepted from discharge.

/ / /

---

[5] A review of relevant case law reveals district court decisions relying on *Long*, but predating the Ninth Circuit's adoption of the *Beard* test. *See, e.g., In re LaRue*, 215 B.R. 766, 767-68 (Bankr. D. Ariz. 1997); *Hess v. United States*, 785 F. Supp. 137, 138-39 (E.D. Wash. 1991). *Cf. United States v. Maris*, No. C10-1337, 2015 WL 427827, at *6-8 (D. Nev. Feb. 2, 2015) (finding *Long* applicable and that a "zero return" triggered the statute of limitations for the assessment of a tax deficiency).

1            b.    <u>Reducing tax assessments to judgment</u>:

2       In an action seeking to reduce a tax assessment to judgment, the United States bears the

3 initial burden of proof. *Palmer v. IRS*, 116 F.3d 1309, 1312 (9th Cir. 1997) (citing *United States*

4 *v. Stonehill*, 702 F.2d 1288, 1293 (9th Cir. 1983)).  It satisfies this burden by "introducing into

5 evidence its assessment of taxes due." *Oliver v. United States*, 921 F.2d 916, 919 (9th Cir.

6 1990).  Such assessments "are normally entitled to a presumption of correctness so long as they

7 are supported by a minimal factual foundation." *Palmer*, 116 F.3d at 1312.  With unreported

8 income, as is at issue here, there must be some "some minimal evidence" linking the taxpayer to

9 the source of the income. *Id.* at 1313.  When such evidence is provided, the burden shifts to the

10 taxpayer to show the assessment is incorrect. *Id.*  The presumption is rebutted by establishing by

11 a preponderance of the evidence that the assessment is arbitrary or erroneous. *Rapp v.*

12 *Commissioner*, 774 F.2d 932, 935 (9th Cir. 1985).

13       Plaintiff submits a declaration accompanied by an IRS account transcript for each tax

14 period at issue.  Dkts. 85-20 & 85-23.  The transcripts "include the records of tax assessments,

15 penalties, interest, payments, and other changes that occurred on Mr. Beresford's accounts and

16 reflect that the IRS audited Beresford for each of the years following when the returns were

17 due." Dkt. 85-20, ¶7.  These official IRS documents constitute "probative evidence in and of

18 themselves and, in the absence of contrary evidence, are sufficient to establish that notices and

19 assessments were properly made." *Hughes v. United States*, 953 F.2d 531, 540 (9th Cir. 1992).

20 Plaintiff also produces evidence of income Beresford earned during the tax years at issue,

21 including his testimony he received royalty payments for book sales, Dkt. 85-1 at 24-29, 52, tax

22 forms filed by AVI and reporting income, Dkts. 85-11 & 85-12, and IRS Form 4549-A Income

23 Tax Discrepancy Adjustments and associated examination lead sheets showing the IRS's

24

calculation of Beresford's tax liability and the bank deposit analysis performed, Dkt. 85-26.  This evidence provides the necessary factual foundation for the IRS's assessments and is entitled to a presumption of correctness.  *See, e.g.*, *Hardy v. Comm'r*, 181 F.3d 1002, 1004-05 (9th Cir. 1999) (burden satisfied with, *inter alia*, worksheets calculating amount of tax owed based on income statements received from employer and bank).

Plaintiff's showing shifts the burden to Defendants.  Beresford and McKnight do not, however, demonstrate the tax assessments are incorrect.  They, at most, address the assessments through reiteration of the "'voluntary compliance'" argument.  Dkt. 86 at 6-8.  This Court, like others, has repeatedly rejected this argument as frivolous.  *See supra* at 9-10.  *See also* Dkt. 85 at 14-15 (describing this and similar frivolous arguments made by Beresford in response to discovery requests, in his responsive pleading, and in motions).  "The Court need not continue to address such frivolous arguments 'with somber reasoning and copious citation of precedent; to do so might suggest that these arguments have some colorable merit' when they plainly do not." *Kraus*, 2018 WL 1610225, at *5 (quoting *Crain v. Commissioner*, 737 F.2d 1417, 1417 (5th Cir. 1984)).  Because Beresford and McKnight fail to identify any basis for rebutting the presumption of correctness established by Plaintiff, Plaintiff is entitled to judgment on the income tax assessments against Beresford for the 2003-2006 tax years.

        c.     Enforcement of tax liens:

With a failure to pay taxes due, federal tax liens on "all property and rights to property" belonging to the taxpayer arise as of the date of the assessment and continue until the liabilities are satisfied or become unenforceable.  26 U.S.C. §§ 6321, 6322.  The liens "reach every interest in property that a taxpayer might have." *United States v. Nat'l Bank of Com.*, 472 U.S. 713, 719-20 (1985).  Once the liens are established in relation to a property, the United States may,

1  pursuant to § 7403, foreclose the liens, sell the property, and apply the proceeds toward the tax

2  liens at issue.  *See United States v. Rodgers*, 461 U.S. 677, 692-94 (1983).  In an action to

3  enforce the lien, "[a]ll persons having liens upon or claiming any interest" in the property at

4  issue must be made parties to the action[,]" and "[t]he court shall . . . adjudicate all matters

5  involved therein and finally determine the merits of all claims to and liens upon the property[.]"

6  § 7403(b)-(c).

7        Plaintiff asserts it has named as Defendants all parties having liens upon or claiming any

8  interest in the Camas Property, and seeks to adjudicate the merits of the claims against that

9  property, order a sale, and distribute the proceeds according to the priority of the claims.

10 Plaintiff, as discussed above, establishes that income taxes for the tax years 2003-2006 were

11 properly assessed against Beresford.  Accordingly, on the dates of those assessments, liens in

12 Plaintiff's favor arose and attached to all property and rights to property belonging to Beresford.

13 Plaintiff also, as discussed below, asserts that liens arose and attached to the Camas Property as a

14 result of penalties assessed, that it may enforce those liens despite Beresford's bankruptcy

15 discharge, and that Beresford's federal tax and penalty liabilities are collectable against the entire

16 Camas Property notwithstanding McKnight's interest.

17              i.    Enforcement of liens for penalties despite discharge:

18       In addition to income taxes owing, the IRS assessed fraudulent failure to file penalties

19 pursuant to 26 U.S.C. § 6651(f) for the 2003-2004 years, fraud penalties under § 6663 for the

20 2005-2006 years, late-payment penalties under § 6651(a)(3), and penalties for not paying

21 estimated income taxes under § 6654.  *See* Dkt. 85 at 8; Dkt. 85-1, ¶¶7-12; Dkts. 85-23 – 85-25.

22 It also assessed penalties under § 6702 for submitting frivolous returns and other documents for

23 the tax years 2002-2006 and 2009.  *See* Dkt. 85 at 9; Dkt. 85-20, ¶11; Dkt. 85-21.

24

Liens that arose upon the assessment of the above-described penalties continue to attach to Beresford's pre-petition property, including the Camas Property, despite Beresford's bankruptcy discharge. *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991); *In re Isom*, 901 F.2d 744, 745 (9th Cir. 1990) (explaining that, while "[a] discharge in bankruptcy prevents the I.R.S. from taking any action to collect the debt as a personal liability of the debtor[,]" the debtor's "property remains liable for a debt secured by a valid lien, including a tax lien.") *Accord United States v. Black*, 725 F. Supp. 2d 1279, 1289 (E.D. Wash. 2010), *aff'd*, 482 F. App'x 241 (9th Cir. 2012). Plaintiff also observes that the IRS's failure to timely refile notices of federal tax lien for § 6702 assessments does not prevent enforcement of these liens because revocations of release the IRS filed with respect to the assessments "shall have the same force and effect . . . as a lien imposed by § 6321 (relating to lien for taxes)." 26 U.S.C. § 6325(f)(2). Plaintiff is, for this reason and for the reason stated above, entitled to enforce the liens arising from the above-described penalties against the Camas Property.

ii.    <u>Enforcement against entire Camas Property</u>:

"In Washington, all property acquired during marriage is presumptively community property." *Matter of Marriage of Watanabe*, 199 Wn.2d 342, 351, 506 P.3d 630 (2022) (citing *Dean v. Lehman*, 143 Wn.2d 12, 19, 18 P.3d 523 (2001); RCW 26.16.030). There must be clear and convincing evidence to overcome this presumption. *Kyko Glob. Inc. v. Prithvi Info. Sols. Ltd.*, No. C13-1034-MJP, 2014 WL 2511627, at *5 (W.D. Wash. June 4, 2014) (citing *In re Marriage of Mueller*, 140 Wn. App. 498, 501-02, 167 P.3d 568 (2007)). Likewise, tax liabilities incurred after marriage are presumed to be community debts unless that presumption is overcome with clear and convincing evidence. *Reid v. United States*, No. C98-5432-FDB, 2001 WL 260056, at *6 (W.D. Wash. Jan. 31, 2001) (citing *Beyers v. Moore*, 45 Wn.2d 68, 70, 272

1  P.2d 626 (1954)), *aff'd*, 31 F. App'x 564 (9th Cir. 2002).  Further, "[u]nder Washington law,

2  'community real estate shall be subject to . . . liens of judgments recovered for community

3  debts[.]'" *United States v. Smith*, No. C14-5952-RJB, 2016 WL 471171, at *3 (W.D. Wash. Feb.

4  8, 2016) (quoting RCW 26.16.040)).

5      Beresford and McKnight were married in or around 1999 and divorced in December

6  2015.  Dkt. 85-1 at 98; Dkt. 85-19.  During their marriage, they acquired the Camas Property and

7  shared in its expenses and upkeep, and they both continue to reside at that location to the present

8  day.  Dkt. 85-1 at 98-99; Dkt. 85-7 (deed dated in 2004); Dkt. 85-18 at 6-7, 33-35, 41.  The

9  federal income taxes and penalties at issue in this matter were also assessed during their

10  marriage.  Dkt. 85-23 (assessments dated in 2011).  The Camas Property is thus presumptively

11  community property, and the tax liabilities are presumptively community debts.  Unless

12  Defendants can overcome these presumptions with clear and convincing evidence, Plaintiff may

13  enforce its liens against the Camas Property and collect the amounts owing against the entire

14  property, including any interest held by McKnight.

15      Neither Beresford, nor McKnight present clear and convincing evidence overcoming the

16  presumptions.  Both ask that the Court deem McKnight an "innocent spouse" and disallow the

17  imposition of a lien on her "50% ownership" of the Camas Property.  *See* Dkts. 86 & 90.  They

18  raise allegations against an IRS agent associated with their divorce, and they point to the

19  hardships they will face with the sale of their home given their ages and disabilities.  *Id*.

20  However, they provide no argument or evidence undermining the status of the Camas Property

21  as community property, or Beresford's tax liabilities as community debt.  They, at most and

22  insufficiently, point to the fact that McKnight separately filed her own taxes.  Moreover, neither

23  a divorce, nor innocent spouse protection prevents foreclosure on liens against community

24

property. *See, e.g., Kraus*, 2018 WL 1610225, at *6 (finding United States entitled to enforce tax liens against entirety of property, including divorced former spouse's interest, and explaining that, "[w]hile innocent spouse relief prevents the assessment of a tax against" the innocent spouse "individually in any separate property she may possess, it does not affect the ability of the Government to pursue collection remedies against [the spouse's] interest in community property.")[6]

The remaining arguments offered by Beresford and McKnight likewise fail to set forth any basis for relief. For example, their requests for injunctive relief and monetary damages are procedurally defective given the absence of any pending counterclaims for such relief. The Court, for this reason and for the reasons stated above, finds the taxes and penalties incurred by Beresford are community debts, that the tax liens attach to the entire Camas Property, and that Plaintiff may enforce its liens against the property and collect the taxes, penalties, and other accruals owed.

/ / /

---

[6] Plaintiff observes that, in *Kraus*, 2018 WL 1610225, at *7, the Court noted a failure to address whether the United States could collect "post-divorce accruals" from a divorced former spouse's interest in property where tax liens arose and were recorded during the marriage. Dkt. 85 at 19. The parties subsequently stipulated that the United States could collect all of its liens against the value of the property regardless of whether they pertained to interest or penalties accruing after the divorce. *Kraus*, C16-5449-BHS (W.D. Wash. Apr. 16, 2018) (Dkt. 85). Plaintiff here points to authority showing the federal tax liens include all interest and other statutory accruals that may accrue on an unpaid tax assessment. *See* 28 U.S.C. § 6321 ("If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (*including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto*) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.") (emphasis added); § 6601(a) (interest accrues from the date payment is due until the date paid); § 6665(a) (additions to tax, additional amounts, and penalties are assessed, collected, and paid in the same manner as taxes). *See also Purcell v. United States*, 1 F.3d 932, 943 (9th Cir. 1993) (describing § 6601 as a "binding statutory directive to allow interest to the government as of the time notice and demand was made. . .."); *Paul Revere Life Ins. Co. v. Brock*, 28 F.3d 551, 553 (6th Cir. 1994) (stating the government enjoys the same priority with regard to both tax liens and interest on those liens). Defendants do not dispute and the Court finds no basis for questioning the authority cited.

1  B.    Motion for Default Judgment

2          If a defendant fails to plead or otherwise defend, the Clerk enters the party's default.

3  Fed. R. Civ. P. 55(a).  The Court may thereafter enter default judgment.  Fed. R. Civ. P. 55(b)(2).

4  Entry of default judgment is left to the Court's discretion.  *Aldabe v. Aldabe*, 616 F.2d 1089,

5  1092 (9th Cir. 1980).  Factors pertinent to the Court's decision (the "*Eitel* factors") may include:

6  (1) the possibility of prejudice to the plaintiff if relief is denied; (2) the merits of plaintiff's

7  substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the

8  possibility of a dispute concerning material facts; (6) whether default was due to excusable

9  neglect; and (7) the strong policy preference for decisions on the merits.  *Eitel v. McCool*, 782

10  F.2d 1470, 1471-72 (9th Cir. 1986).

11          Plaintiff explains that Capital One was named as a Defendant because it may claim an

12  interest in the Camas Property, and, if a sale of the property was ordered, Capital One would be

13  paid upon establishing its liens attached to the property and held priority over other lienholders.

14  After naming Capital One as a Defendant, Plaintiff provided the Court with proof of service.

15  Dkts. 21 & 24.  Upon Capital One's failure to respond and Plaintiff's motion, the Court entered

16  default.  Dkts. 30 & 32.

17          Plaintiff now argues a default judgment should be entered and Capital One found to have

18  no interest in the Camas Property.  *See, e.g.*, *United States v. Sprenger*, No. C20-0026, 2021 WL

19  3406340, at *4-7 (D. Ariz. Aug. 4, 2021) (granting default judgment against a bank and ordering

20  that it was not entitled to any distribution of proceeds of the sale of property to be sold to enforce

21  federal tax liens).  The Court, with consideration of the motion, record, and the *Eitel* factors,

22  agrees a default judgment against Capital One is warranted.

23

24

1    First, without a default judgment, the title to the Camas Property could be clouded by

2    Capital One's potential interest, possibly preventing or frustrating Plaintiff's ability to satisfy

3    Beresford's tax liabilities.  *See, e.g., Key Bank Nat. Ass'n v. Van Noy*, No. C07-1076, 2008 WL

4    4646045, at *6-7 (D. Or. Oct. 17, 2008).  Thus, the absence of a default judgment poses potential

5    prejudice to Plaintiff.

6    The second and third *Eitel* factors consider the merits of the claims and the sufficiency of

7    the complaint.  Here, Plaintiff sufficiently alleges liens arose in its favor, attached to the Camas

8    Property, and have priority over all other interests in the property, Capital One has not appeared

9    to claim an interest, and Plaintiff has now demonstrated it is entitled to enforce its liens against

10   the property.  These factors therefore also favor entry of default judgment.  *See, e.g., United*

11   *States v. Aguinaldo*, No. C20-0434, 2023 WL 2317351, at *2 (D. Haw. Mar. 1, 2023) (finding

12   complaint sufficient and that claim had merit based on allegations that default defendants may

13   have interest in property, plaintiff had valid tax liens against property, foreclosure of liens was

14   appropriate, and none of default defendants, all of whom had been served, appeared to claim an

15   interest).

16   In evaluating the fourth factor, the Court considers "the amount of money at stake in

17   relation to the seriousness of Defendant's conduct."  *PepsiCo, Inc. v. California Sec. Cans*, 238

18   F. Supp. 2d 1172, 1176 (C.D. Cal. 2002).  In this case, Plaintiff does not seek money damages

19   against Capital One, but does seek to collect a substantial amount in unpaid taxes and, as stated

20   above, its collection efforts could be frustrated if title to the Camas Property remains clouded by

21   Capital One's potential interest.  Consideration of the sum of money at stake thus also favors

22   granting a default judgment.  *See, e.g., id.* at 1177 (finding the fact that plaintiff did not seek

23   monetary damages against defaulted defendant favored default judgment).

24

1    With respect to the fifth factor, because the well-pleaded facts are treated as true upon the

2    entry of default, there is no likelihood of a genuine dispute of material fact. *See, e.g., id.* The

3    Court also, considering the sixth factor, finds no evidence default resulted from excusable

4    neglect. That is, where Capital One was both served with the pleading and sent copies of the

5    request for entry of default, *see* Dkts. 24 & 30, any possibility of default resulting from

6    excusable neglect is remote. *Elektra Ent. Grp. Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal.

7    2005).

8    Finally, considering the seventh factor, "'the preference to decide cases on the merits

9    does not preclude a court from granting default judgment.'" *PepsiCo, Inc.*, 238 F. Supp. 2d at

10   1177 (quoted source omitted). The "mere existence" of Rule 55(b) indicates this preference is

11   not dispositive, the absence of an answer makes a decision on the merits "impractical, if not

12   impossible[,]" and it remains that, under Rule 55(a), a case may be terminated before a hearing

13   on the merits "whenever a defendant fails to defend an action." *Id.*

14   The Court, in sum, finds that default judgment should be entered against Capital One and

15   that Capital One should be found to have no interest in the Camas Property.

16   <u>CONCLUSION</u>

17   For the reasons set forth above, Beresford's Motion for Summary Judgment, Dkt. 86,

18   should be DENIED, and Plaintiff's Motion for Summary Judgment Against Beresford and

19   McKnight and Motion for Default Judgment Against Capital One, Dkt. 85, should be

20   GRANTED. As requested by Plaintiff, the Court should enter judgment against Beresford,

21   finding his income tax liabilities for the years 2003-2006 are excepted from discharge pursuant

22   to 11 U.S.C. § 523(a)(1)(B)(i), and that he is personally indebted to the United States in the

23   amount of $518,673.92 plus interest from May 31, 2023 for his 2003-2006 federal income tax

24

1  liabilities.  *See* Dkt. 85 at 23-24.  The Court should further enter an Order permitting the United

2  States to enforce its tax liens against the Camas Property to collect Beresford's unpaid 2003-

3  2006 income tax liabilities and associated penalties, as well as 2002-2006 and 2009 frivolous

4  submission penalties under 26 U.S.C. § 6702.  The Court should, finally, enter default judgment

5  against Capital One, finding it holds no interest in the Camas Property and has no right to any

6  proceeds from the sale of the property.

7                                                    <u>OBJECTIONS</u>

8              Objections to this Report and Recommendation, if any, should be filed with the Clerk and

9  served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and

10  Recommendation is signed.  Failure to file objections within the specified time may affect your

11  right to appeal.  Objections should be noted for consideration on the District Judge's motions

12  calendar for the third Friday after they are filed.  Responses to objections may be filed within

13  **fourteen (14) days** after service of objections.  If no timely objections are filed, the matter will be

14  ready for consideration by the District Judge on **August 11, 2023**.

15             Dated this 26th day of July, 2023.

16

17                                                            S. KATE VAUGHAN
                                                             United States Magistrate Judge

18

19

20

21

22

23

24